UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
DEREK SINCERE BLACK WOLF CRYER,         )
                                        )
        Plaintiff,                      )
                                        )        Civil Action No. 10-11346-PBS
v.                                      )
                                        )
UMASS MEDICAL CORRECTIONAL HEALTH,      )
TERRE K. MARSHALL, DYANA NICKL,         )
RUSSELL PHELPS, MARLENE DODGE,          )
ANGELA D'ANTONIO, LYNN SAROA,           )
THOMAS DICKHAUT, and PAMELA O'DELL      )
                                        )
        Defendants.                     )
_____)

## REPORT AND RECOMMENDATION

[Docket Nos. 27, 54, 56, 62, 75]

November 25, 2011

Boal, M.J.

    Plaintiff Derek Sincere Black Wolf Cryer ("Cryer") has sued, pro se,[1] various defendants alleging that they committed, among other things, negligence and constitutional violations by failing to provide him with adequate medical care. (Docket No. 1). Defendant UMass Medical Correctional Health ("UMCH") has moved to dismiss the complaint pursuant to Rule 12(b)(1). (Docket No. 54). In response to UMCH's motion, Cryer voluntarily has moved to dismiss UMCH from the complaint and substitute "UMCH Employee(s) Policy Makers" in its stead.

---

[1] Accordingly, this Court is required to construe Cryer's pleadings liberally. Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1991).

1

(Docket No.

62).  Defendants Thomas Dickhaut, Pamela O'Dell, and Terre Marshall ("DOC Defendants") and

Defendants Dyana Nickl, Russell Phelps, Marlene Dodge, Angela D'Antonio, and Lynn Sarao[2]

("UMCH Employee Defendants") have moved separately for summary judgment.[3]  (Docket Nos.

56, 75).  For the reasons discussed below, this Court recommends that the District Court: (1) grant

UMCH's motion to dismiss; (2) deny Cryer's Motion for Voluntary Dismissal and Substitution;

(3) grant the DOC Defendants' motion for summary judgment; and (4) grant the UMCH

Employee Defendants' motion for summary judgment.[4]

## I.  Procedural Background

### A.  The Complaint

On July 22, 2010, Cryer filed a complaint[5] against UMCH, the DOC Defendants and the

UMCH Employee Defendants in both their individual and official capacities.  (Docket No. 1).  At

the time of his complaint, Cryer was an inmate at the Souza Baranowski Correctional Center

---

[2]  Although Cryer brought his action against Lynn Saroa, the proper spelling of the last name is Sarao.  See UMCH Employee Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("UMCH Def.'s Memo.") at n. 1.  (Docket No. 76).

[3]  On March 4, 2011, Defendants D'Antonio, Dodge, and Sarao filed a motion to dismiss on the basis that they were immune from suit under the Massachusetts Tort Claims Act.  (Docket No. 27).  At that time the other Defendant UMCH Employees, Defendants Nickl and Phelps, had not been served with Cryer's complaint.  Because Nickl and Phelps have now been served with the complaint, all the UMCH Employee Defendants assert this argument in their motion for summary judgment.  See UMCH Def.'s Memo., p. 15.  Accordingly, this Court recommends that the District Court deny the motion to dismiss as moot.

[4]  On March 15, 2011, Judge Saris referred all dispositive motions to this Court for report and recommendation.

[5]  On February 22, 2011, Judge Saris ruled that the operative pleadings in this matter are the Complaint (Docket No. 1) and the amended statements set forth in Plaintiff's Motion to Amend the Complaint (Docket No. 14).

("SBCC").  Cryer complains of the medical care he received from the defendants relative to his skin condition, tinea versicolor.  Complaint ¶ 1.  Cryer alleges that tinea versicolor causes his skin to dry up and peel from his body, which causes excruciating pain and discomfort and has resulted in scarring.  Complaint ¶ 2.  Cryer claims that Sween Cream eradicates 99% of the peeling and gives 100% relief from pain and itching.  Complaint ¶ 4.  Cryer alleges that although he has received Sween Cream since February 2010, in the past defendants have failed to provide him with access to a dermatologist, failed to prescribe and/or provide him with Sween Cream, and have wrongfully denied his grievances regarding the same.  Complaint ¶¶ 6-24.

Cryer alleges that the defendants have (1) deprived him of constitutional rights (namely those provided by the Eighth and Fourteenth Amendments) under color of state law within the meaning of 42 U.S.C. § 1983; (2) deprived him of his constitutional rights under Article 26 of the Massachusetts Declaration of Rights; and (3) committed negligence in violation of Massachusetts Tort Claims Act ("MTCA"), M.G.L. c. 258.  He seeks compensatory and punitive damages, fees, costs, and declaratory relief.  Complaint, p. 5-6.

> 1.  ***Allegations Against UMCH and UMCH Employee Defendants***

Cryer alleges that defendant nurse Sarao and nurse practitioner D'Antonio refused to renew his prescription for Sween Cream, Complaint ¶¶ 6, 12, 20, 23, and that they also refused to schedule him for appointments with a dermatologist or other doctor.  Complaint ¶ 8, 12, 20, 23.  Cryer alleges that defendant Health Services Administrator Dodge refused to respond to his requests for information, medical grievances and appeals, and also refused him access to a doctor, dermatologist or Sween Cream.  Complaint ¶¶ 16, 17, 18.  Cryer alleges that defendant Nickl, grievance and appeals coordinator for UMCH, denied or failed to respond to his grievances and

appeals to see a dermatologist and receive Sween Cream and also wrongfully suspended his medical services privileges. Complaint ¶¶ 10, 16, 18, 19. Cryer alleges that defendant Phelps, Health Services Administrator at SBCC, denied Cryer's grievances and appeals to see a dermatologist and receive Sween Cream. Complaint ¶ 10. With respect to defendant UMCH, Cryer alleges that it failed to intervene or act with respect to Cryer's alleged deprivation of rights. Complaint ¶ 11.

### 2. *Allegations Against DOC Defendants*

With respect to defendant Marshall, Director of DOC Health Services, Cryer alleges that she denied or failed to respond to his grievances and appeals to see a dermatologist and receive Sween Cream. Complaint ¶¶ 10, 16, 18. Cryer alleges that defendant Superintendent Dickhaut and Institutional Grievance Co-Ordinator O'Dell denied Cryer's May 2008 grievance and appeal requesting access to a dermatologist and medical doctor. Complaint ¶ 13; Motion to Amend ¶ 13 (Docket No. 14). Cryer also alleges that defendant Dickhaut "refused to act" after the prison's inner perimeter security took pictures of his medical condition. Complaint ¶ 22; Motion to Amend ¶ 22 (Docket No. 14).

### B. Status Report

On March 7, 2011, the District Court ordered the DOC defendants to provide it with a status report with respect to Cryer's medical care. (Docket No. 30). The DOC Defendants' March 21, 2011 status report states that Cryer has received Sween Cream since February 2010. (Docket No. 35).

## II.    **UMCH's Motion to Dismiss**

UMCH moved to dismiss the claims against it for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Docket No. 54).  UMCH argues that the claims against it should be dismissed because it is an agency of the Commonwealth of Massachusetts, and therefore is immune to suit pursuant to the Eleventh Amendment.  In support of its motion, UMCH submitted an affidavit[6] of Robert E. Jenal, Vice Chancellor for Administration and Finance for the University of Massachusetts Medical School ("Jenal Aff.") that details UMCH's financial and administrative structure.  Memorandum in Support of Motion to Dismiss, Exhibit A.  (Docket No. 55).  In response to UMCH's motion, Cryer voluntarily moved to dismiss UMCH from the complaint and substitute "UMCH Employee(s) Policy Makers" in its stead.  (Docket No. 62).

### A.    Standard of Review

The proper vehicle for challenging a court's subject matter jurisdiction is Rule 12(b)(1) of the Federal Rules of Civil Procedure.  <u>Valentin v. Hospital Bella Vista</u>, 254 F.3d 358, 362 (1st Cir. 2001).  In reviewing a motion to dismiss under Rule 12(b)(1), a court must credit the plaintiff's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor.[7]  <u>Merlonghi v. United States</u>, 620 F.3d 50, 54 (1st Cir. 2010).  In deciding a Rule 12(b)(1)

---

[6]  The Jenal Affidavit is dated June 17, 2009 and is pertinent to the allegations in the Complaint which date from 2007 to 2009.

[7]  As the <u>Valentin</u> court points out, subject matter jurisdiction may be challenged in two ways: a "sufficiency challenge" and a "factual challenge."  <u>Id.</u> at 363.  In a sufficiency challenge, a defendant challenges the sufficiency of the plaintiff's jurisdictionally significant facts.  The court then accepts plaintiff's well-pleaded factual allegations, draws inferences in the plaintiff's favor and then disposes of the challenge.  In a factual challenge, a defendant attacks the accuracy of the plaintiff's jurisdictional facts and proffers materials of an evidentiary quality.  The court

motion, a court may consider whatever evidence has been submitted, including depositions and

exhibits.  Id.  The party invoking federal court jurisdiction has the burden of proving its existence.

Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

      B.     Sovereign Immunity

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of

the United States shall not be construed to extend to any suit in law or equity, commenced or

prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State."  U.S. Const. Amend. XI.  The Eleventh Amendment also bars

suits brought for money damages in federal court against a state by its own citizens.  Hans v.

Louisiana, 134 U.S. 1 (1890).  In the absence of consent or abrogation, the Eleventh Amendment

proscribes a federal court case in which the state or one of its agencies or departments is the

named defendant.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).

Accordingly, if UMCH is a state agency, then Cryer is barred in federal court from pursuing his

claims for money damages against UMCH or any employee of UMCH acting in his or her official

capacity.

In Fresenius, the First Circuit set forth a two-pronged test for determining whether a

public entity is entitled to Eleventh Amendment immunity.  Fresenius Med. Care Cardiovascular

Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st Cir. 2003).  The

first prong asks whether the state has clearly structured the entity to "share its sovereignty."  Id.

If the factors assessed in evaluating the structure of the state-related entity are inconclusive, then

---

then addresses the merits by resolving the factual disputes between the parties and has broad
authority to order discovery and hold evidentiary hearings.  Id.  Here, UMCH challenges the
sufficiency of Cryer's jurisdictional allegations.

the second prong assesses the risk that damages will be paid from the public treasury.  Id.  "This analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness."  Id.

The UMCH program was created by UMass Medical School ("UMMS"), which in turn is part of the University of Massachusetts System.  The UMass system as a whole is a statutorily created entity that is an agency of the Commonwealth of Massachusetts.  M.G.L. c. 75, § 1.  The governing statute states in pertinent part that the university is a "public institution of higher learning within the system of public higher education and shall be governed by the board of trustees."  Id.  "The board of trustees . . .have all authority, responsibility, rights, privileges, powers and duties customarily and traditionally exercised by governing boards of institutions of higher learning."  Id.  The operating funds for UMass are appropriated by the Massachusetts legislature and administered by the University trustees.  Mass. Gen. Laws ch. 75, §§ 8, 12.

The trustees are directed to maintain a medical school.  M.G.L. c. 75, § 34.  The operating funds for UMMS, as for the University as a whole, are appropriated by the University trustees.  M.G.L. ch. 75, §§ 8, 12.  Accord Neo Gen Screening, Inc. v. New England Newborn Screening Program, No. 98-10394, 1998 WL 35278283, at * 2 (D. Mass. Dec. 3, 1998), aff'd, 187 F.3d 24 (1st Cir. 1999); see also Shocrylas v. Worcester State College, No. 06-40278, 2007 U.S. Dist. LEXIS 82890, at * 16 (D. Mass. October 29, 2007) (finding that states courts have consistently treated the University of Massachusetts as an arm of the state and collecting cases).  Accordingly, the statutory authority provides evidence that the Commonwealth has structured both UMass and its medical school to share the Commonwealth's sovereignty.

Indeed, the Supreme Judicial Court has found that the UMMS is an arm of the state.[8] In McNamara v. Honeyman, 406 Mass. 43, 47-8 (1989), the Court found that the medical school was primarily dependent on the Commonwealth and accountable to it with respect to financial affairs. Several federal courts[9] have found that the UMMS "is a public institution established under the laws of the Commonwealth and is, accordingly, an 'arm' of the state entitled to Eleventh Amendment immunity." Orell v. UMass Memorial Medical Center, Inc., 203 F. Supp. 2d 52, 60 (D. Mass. 2002); Ali v. Univ. of Massachusetts Medical Center, 140 F. Supp. 2d 107, 110 (D. Mass. 2001); Neo Gen, 1998 WL 35278282 at *2.

UMCH is a program run by UMMS that provides medical care in Massachusetts to inmates under contract with DOC. Jenal Aff. ¶ 4. UMCH is not a separately incorporated entity, but simply the name of a program. Id. at ¶ 5. UMCH does not have any sources of funding independent of UMMS. Id. at ¶ 7. Any contract that names or refers to UMCH is approved and entered into by UMMS. Id. at ¶ 10. Accordingly, under the Fresenius test, UMCH also qualifies as an arm of the state.

At least two other courts in this district have found that UMCH should be considered an arm of the state for purposes of Eleventh Amendment immunity. McGee v. UMass Correctional Health, No. 09-40120, 2010 WL 3464282, at * 10 (D. Mass. September 1, 2010) ("UMCH, as a

---

[8] Because the resolution of the sovereignty issue depends almost entirely on the structure and purpose of state law, state judicial interpretations are entitled to considerable weight in that analysis. See Redondo Constr. Corp. v. Puerto Rico Highway and Transp. Auth., 357 F.3d 124, 127-8 (1st Cir. 2004).

[9] Federal court decisions are also germane to the analysis as the question of Eleventh Amendment immunity is an issue of federal law. Fresenius, 322 F.3d at 61 (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n. 5 (1997)).

program completely encapsulated within UMMS and the UMass, is an arm of the state . . ."); Jaundoo v. Clarke, 690 F. Supp. 2d 20, 29 (D. Mass. 2010) ("Because UMCH is a program operated by the UMMS, it too is an arm of the state.").

Accordingly, this Court finds that UMCH is an arm of the state and that Cryer is barred by the doctrine of sovereign immunity from asserting claims against UMCH or any UMCH employee in his or her official capacity in federal court. Any substitution by Cryer of UMCH policy makers in place of UMCH would be futile.

For the foregoing reasons, I recommend that the Court grant UMCH's motion to dismiss and deny Cryer's Motion for Voluntary Dismissal and Substitution.

**III**. **DOC And UMCH Employee Defendants' Motions For Summary Judgment**

The DOC Defendants and the UMCH Employee Defendants have both moved for summary judgment. (Docket Nos. 56, 75). The DOC Defendants argue that they are entitled to summary judgment because: (1) Cryer has failed to establish a violation of his rights under the Eighth Amendment and Article 26 of the Massachusetts Declaration of Rights because he cannot show a serious medical need; (2) Cryer's claim under Article 26 also fails because he cannot obtain money damages directly under the state constitution; (3) the DOC Defendants cannot be liable for Cryer's claims because they do not make medical decisions; (4) Cryer has not shown the physical injuries necessary to satisfy the Prison Litigation Reform Act's ("PLRA") prerequisite for money damages; (5) Cryer cannot obtain money damages from them in their official capacity under Section 1983; (6) they are entitled to qualified immunity; (7) Defendant Dickhaut cannot be held liable under the theory of supervisory liability; (8) they are immune from suit under the MTCA; and (9) Cryer failed to make the proper presentment under the MTCA. See

generally DOC Defendants' Memorandum in Support of Their Motion for Summary Judgment ("DOC Def.'s Memo."). (Docket No. 57).

The UMCH Employee Defendants argue that they are entitled to summary judgment because: (1) Cryer has failed to establish a violation of his rights under the Eighth Amendment and Article 26 of the Massachusetts Declaration of Rights because the care defendants Sarao and D'Antonio provided does not constitute deliberate indifference to a serious medical need and defendants Nickl, Phelps, and Dodge's responses to Cryer's grievances were appropriate; and (2) they are immune from suit under the MTCA. See generally UMCH Def.'s Memo. (Docket No. 76).

A.     Factual Background

The undisputed facts are derived from the DOC Defendants' Statement of Material Facts, the UMCH Employee Defendants' Statement of Material Facts, and the exhibits attached thereto. (Docket Nos. 58, 77).

1.     ***DOC and UMCH Policies Regarding Medical Care***

According to DOC policy, the medical treatment of inmates is the sole responsibility of UMCH, which provides medical and dental health services to all inmates committed to the care and custody of the DOC. Clinical Contract Personnel and the Role of DOC Health Services, 103 DOC 610.00; Affidavit of Pamela O'Dell, Ex. A-1 (Docket No. 58-1). According to 103 DOC 610.01, "matters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists or dentists." Id.

DOC policy provides that the superintendent at each institution shall develop procedures to make sure that inmates have unimpeded access to health care. See Medical Services policy,

103 DOC 630.00, Affidavit of Pamela O'Dell, Ex. A-3 (Docket No. 58-1). Pursuant to the medical services policy, all inmates have a right of access to daily sick call by filling out a sick call slip that must be triaged by a registered nurse or doctor within twenty-four hours or seventy-two hours on weekends. 103 DOC 630.10(4). All sick call slips submitted by an inmate are placed in his or her medical record. Id.

The DOC and SBCC also employ a formal administrative procedure pursuant to 103 CMR 491.00, et seq. designed to address and resolve inmate issues. See Affidavit of Pamela O'Dell, ¶ 3 (Docket No. 58-1). Inmates file a grievance by completing a form and filing it with the Institutional Grievance Coordinator, who then processes the grievance. Id. Inmates cannot use this process to grieve issues related to medical decisions, but they can use the process to grieve the lack of access to medical care. See 103 CMR 491.08(1).

UMCH has an inmate medical service grievance policy. See UMCH Statement of Material Facts, Ex. D (Docket No. 77-4). Inmates are encouraged to first report a medical grievance to the Health Services Administrator or a designee through informal means, such as during a scheduled Management Access period or through the sick slip process. Id. If the inmate wishes to pursue a formal medical grievance, there is a three step process. Id. First, the inmate must file a written grievance with the Health Services Administrator at the facility in which he is incarcerated, who will respond to the inmate with a decision on the issue. Id. If the inmate is not satisfied with the response from the Health Services Administrator, he may appeal to the UMCH Medical Director. Id. If the inmate has followed the appropriate process, the UMCH Medical Director, or a designee, responds to the appeal. Id. If the inmate is not satisfied with the response to this first level appeal, a second level appeal may be filed with the Department of Correction's

Health Services Division.  Id.  The decision of the DOC's Health Services Division is final.  Id.

UMCH may suspend an inmate's ability to file grievances if he disregards proper procedure or

files five or more grievances in a week.  Id.

2.  <strong><em>Cryer's Medical Care</em></strong>

a.  <u>Tinea Versicolor</u>

Nurse practitioner Sheila Porter diagnosed Cryer with tinea versicolor on February 9,

2006 while Cryer was incarcerated at MCI Shirley.  MR 01.[10]  Tinea versicolor is a chronic fungal

infection of the skin.  Affidavit of Angela D'Antonio, UMCH Employee Defendants' Statement

of Facts, Exhibit F at ¶ 4 (Docket 77-6).  Cryer also has a history of ichthyosis, or very dry skin.

Id.  Tinea versicolor does not cause dry skin.  Id at ¶¶ 6, 9.

The main symptom of tinea versicolor is patches of discolored skin with sharp borders and

fine scales.  Id. at ¶ 5.  The patches are often dark reddish-tan in color.  Id.  The most common

sites are the back, underarms, upper arms, chest, and neck.  Id.  Affected areas do not darken in

the sun.  Id.  In African Americans, there may be loss of skin color (hypopigmentation) or an

increase in skin color (hyperpigmentation).  Id.  Other symptoms include increased sweating and

itching.  Id.  Tinea versicolor is a recurring condition that typically comes and goes, and its

incidence tends to increase in hotter weather.  Id. at ¶ 6.  Tinea versicolor occurs as a result of an

overly moist environment on the skin, and it neither causes nor results from dry skin.  Id.  Tinea

versicolor is considered to be a cosmetic issue that does not have to be treated, but it can be

treated with Selsun Blue brand shampoo or, less commonly, an antifungal medication such as

---

[10]  "MR __" refers to Cryer's medical records, submitted as Exhibit B to UMCH
Employee Defendants' Statement of Facts.  (Docket No. 77-2).

clotrimazole, ketoconazole, and miconazole.  Id. at ¶ 7.

           b.        Cryer's Medical Care at MCI-Shirley

Nurse Porter ordered Selenium Sulfide to treat Cryer's tinea versicolor on February 9, 2006.  MR 01.  On March 24, 2006, Dr. Augustin Enaw examined Cryer.  MR 02.  Dr. Enaw noted that Cryer's tenea versicolor was not responsive to Selenium Sulfide and ordered Triamcinolone cream.  Id.  On April 27, 2006, Cryer submitted a sick call request form regarding tinea versicolor and dry skin.  MR 03.  On May 2, 2006, Cryer was scheduled to see a physician or nurse practitioner and, in the interim, was given Eucerin lotion for his "dry skin and skin problem."  Id.

On June 21, 2006 and June 26, 2006, Cryer submitted sick call request forms requesting the renewal of moisturizing cream for his dry skin and tinea versicolor.  MR 04-05.  The staff responded to this sick slip on June 27, 2006.  MR 04.  Cryer was assessed by nurse practitioner Linda Booth, who found that Cryer's skin showed no symptoms of tinea versicolor, rash, or other issues at that time.  MR 06.  Booth noted that she explained to Cryer that there was "no medical indication for moisturizing cream by exam or [history] at this time."  MR 06.  The response to the sick call form notes that Cryer could obtain moisturizers on his own from the prison canteen.  MR 04.  The form also notes that Cryer became argumentative with Booth and the nursing staff, insisting that he had been provided with moisturizing cream at a previous institution.  MR 06.  He was told to return if a skin condition developed.  MR 07.

On June 27, 2006, Cryer submitted two additional sick slips regarding dry skin and tinea versicolor.  MR 07-08.  A nurse responded to these sick slips on July 4, 2006 and July 10, 2006, performed another assessment of Cryer's skin, and noted that there were no skin problems

evident.  Id.  The sick call request form indicates that Cryer again became argumentative with the staff because he claimed to have received moisturizing cream at another institution.  Id.  The nurse noted that Cryer was "having trouble accepting the [nurse practitioner's] assessment…."  Id.  Cryer was again told to return if a skin condition developed.  Id.  Cryer submitted two more sick slips on July 5 and 10, 2006, requesting to see a physician, not the nurse practitioner, regarding his "skin condition."  MR 09-10.

On October 4 and 6, 2006, Cryer submitted sick slips requesting to see a physician regarding his skin conditions.  MR 12-13.  On October 6, 2006, Cryer was examined by Dr. Lorraine Hazard who noted that he presently had signs of tinea versicolor on his feet, arms, and hip.  MR 14.  Dr. Hazard prescribed clotrimazole and tolnaftate for tinea versicolor.  Id.

c.      Cryer's Medical Care at SBCC

On December 11, 2006, Cryer was transferred from MCI-Shirley to SBCC.  MR 15.  At the time of transfer, Dr. Augustin Enaw at SBCC noted that Cryer had tinea versicolor on his entire body.  Id.  The next day, December 12, 2006, Cryer submitted two sick slips requesting skin cream relative to tinea versicolor and complaining of a fungus on his feet.  MR 16-17.

On December 14, 2006, a nurse examined Cryer, who noted scaling and redness on his feet.  MR 16.  The nurse noted that Cryer had stated that triamcinolone cream had been somewhat effective for his tinea versicolor.  MR 17.  The nurse referred Cryer to a nurse practitioner.  Id.  On December 18, 2006, nurse practitioner Mark Schnabel ordered triamcinolone cream for Cryer's arms and miconazole cream for his feet, each for 30 days.  MR 18.

Cryer submitted several sick slips in February 2007 regarding arthritis pain and anxiety and was examined by medical staff.  MR 19-23.  None of these sick slips mention any ongoing

issues with his skin.  Id.

On April 16, 2007, Cryer submitted a sick slip requesting to be seen regarding tinea versicolor.  MR 24-25.  The records note that Cryer was on the list to see a health care provider.  Id.  On May 7, 2007, Cryer submitted a sick slip requesting to see a nurse regarding "years of ongoing, extreme dry skin."  MR 26.  The staff responded by noting that Cryer was on the list to see a provider due to his multiple sick slips.  Id.

On June 3, 2007, Cryer submitted a medical grievance stating that he had submitted two sick slips requesting to see a dermatologist relative to tinea versicolor, tinea pedis, and extreme dry skin.  G 01.[11]  Cryer claimed that two scheduled appointments had been cancelled and requested Sween Cream.[12]  Id.

On June 7, 2007, defendant Phelps, Health Services Administrator at SBCC, responded to Cryer's June 3, 2007 grievance.  G 02.  Phelps informed Cryer that his review of Cryer's file indicated that Cryer had failed to show for a scheduled medical visit on May 9, 2007, and had not submitted a sick slip since that time requesting another visit.  Id.  Phelps instructed Cryer to submit another sick slip.  Id.

On June 13, 2007, Cryer submitted a sick slip requesting to see a dermatologist, medication for tinea versicolor, medication for tinea pedis, and Sween Cream.  MR 27.  The staff referred Cryer to defendant nurse practitioner D'Antonio on June 20, 2007 regarding his skin issues.  Id.  D'Antonio examined Cryer and noted areas of patchy hypo/hyper-pigmentation on his

---

[11] ("G __") refers to Cryer's grievance documentation, submitted as Exhibit C to UMCH Employee Defendants' Statement of Material Facts.  (Docket No. 77-3).

[12] Sween Cream is a non-prescription brand moisturizer.  Affidavit of Angela D'Antonio, ¶ 8 (Docket 77-6).

trunk and arms, mild dry skin and that his feet had white, flaky areas on the soles and mild fissuring.  MR 28.  D'Antonio confirmed the diagnosis of tinea versicolor and tinea pedis.  Id.  D'Antonio wrote an order for anti-fungal ketoconazole cream for Cryer's tinea versicolor, but did not prescribe Sween Cream because it is not a treatment for tinea versicolor and she determined that Cryer did not meet the criteria for Sween Cream.  MR 28-29; Affidavit of Angela D'Antonio, ¶ 8.  D'Antonio made a podiatry referral for Cryer's foot problem.  MR 28-29.

On July 10, 2007, defendant Nickl, grievance and appeals coordinator for UMCH, responded to Cryer's June 3, 2007 medical grievance appeal and stated that the issues raised in his appeal had been addressed by his prior medical treatment.  G 04.

On July 15, 2007, Cryer submitted a sick slip requesting to see a dermatologist for his skin condition and Sween Cream.  MR 30.  The staff referred back to the June 20, 2007 note by D'Antonio that a prescription for Sween Cream was not necessary.  Id.

On July 21, 2007, Cryer filed a second level appeal of Nickl's determination regarding his June 3, 2007 grievance to defendant Marshall, Director of DOC Health Services.  G 05.  In his appeal, Cryer acknowledged the fact that he had received Ketoconazole cream for his tinea versicolor but requested Sween Cream for his dry skin.  Id.

On August 6, 2007, defendant Marshall responded to Cryer's appeal of the June 3, 2007 grievance.  G 06.  Marshall stated that UMCH had offered appropriate health care relative to his skin complaints, specifically that he had been examined by a nurse practitioner, an order had been placed for ketoconazole cream, a podiatry referral was submitted, and his records indicated that he did not meet the criteria for Sween Cream and that a referral to a dermatologist was not clinically indicated.  Id.

On August 15, 2007, Cryer submitted a sick slip requesting to see a dermatologist for his skin condition, scars, and sores. MR 31. He noted that his skin was dry and he thought he might have eczema and again requested Sween Cream. Id. Referring to D'Antonio's note of June 20, 2007, the staff noted that Sween Cream was not the appropriate treatment for this condition. Id.

On December 31, 2007, Cryer submitted a sick slip requesting to see a dermatologist, and noted his prior request for Sween Cream. MR 32. The staff referred back to the June 20, 2007 note by D'Antonio. Id.

On January 3, 2008, Cryer submitted a sick slip requesting to see a dermatologist for Sween Cream "due to claims of 16 years of dry itchy skin and tinea versicolor." MR 33. On Janaury 4, 2008, the staff noted that this issue had already been addressed. Id. On January 16, 2008, D'Antonio ordered Sween Cream for 30 days due to a diagnosis of severe dry skin. MR 34.

On February 27, 2008, Cryer submitted a sick slip requesting a renewal of the order for Sween Cream. MR 35. On February 28, 2008, defendant nurse Sarao assessed Cryer's skin and noted that it "appeared to be in good shape at that time." Id. Sarao stated that the order for Sween Cream had been discontinued and referred Cryer to a nurse practitioner. Id. On March 1, 2008, D'Antonio noted that if there were no current skin problems, there was no need for a new order for Sween Cream. Id.

On March 3, 2008, Cryer filed a medical grievance that he was being denied his right to see a doctor and dermatologist regarding his dry skin and tinea versicolor. G 07. On March 6, 2008, defendant Phelps responded that after consideration of Cryer's file, it was determined that his skin had been recently assessed to be in good condition and that the requested medication was available in the prison canteen. G 08.

On March 24, 2008, Cryer submitted a sick slip requesting a complete examination pertaining to tinea versicolor and an order for Sween Cream.  MR 36.  Defendant Sarao examined Cryer and noted dry skin on his abdomen, back and legs, but no open lesions.  Id.  Sarao noted that Cryer's skin on his feet and heels were very dry, and there was one area on the right heel that was split.  Id.  Sarao noted that Cryer was requesting lotions.  Id.  On March 29, 2008, D'Antonio noted that if there were no signs and symptoms of infection, then there was no need for a prescription for lotion.  Id.

On April 10, 2008, Nurse Kelly Klaprade, who was a nurse practitioner student at the time, saw Cryer for follow up of tinea versicolor.  MR 38.  Nurse Klaprade noted that Cryer requested that she: (1) reorder triamcinolone cream; (2) order Sween Cream; (3) refer him to dermatology; and (4) refer him to a physician.  MR 38.  Cryer told Nurse Klaprade that he had a "serious skin condition," and complained about scarring, scaling of skin, and pruritus [itching].  Id.  Nurse Klaprade examined Cryer and noted areas of ichthyotic patches [dry, thickened, scaly skin] on his back, abdomen, and chest but that there were no open or draining skin lesions.  Id.  Nurse Klaprade ordered triamcinolone steroidal cream.  Id.  Nurse Klaprade noted that Cryer was not referred to the physician because there was no apparent need at the time and that because of UMCH policy she could not order Sween Cream.  Id.  After Nurse Klaprade's progress note, D'Antonio noted that Cryer could purchase Eucerin cream at the prison canteen, which he had stated was effective.  Id.  That day, D'Antonio ordered triamcinolone cream for Cryer for 30 days.  MR 39.

On May 9, 2008, Cryer filed a medical grievance that stated that he was not receiving Lamisil and foot moisturizing cream.  G 09.  Cryer filed another medical grievance on May 9,

2008 that he was being denied the opportunity to see a dermatologist and a doctor.  G 10.  On

May 9, 2008, defendant Phelps stated that after reviewing Cryer's file, it was determined that

Cryer's skin condition was cosmetic and directed him to submit a sick slip regarding Lamisil

cream.  G 11.

On May 9, 2008, Cryer filed a grievance with the DOC that complained that he had been

denied access to see a dermatologist for a skin condition.  Affidavit of Pamela O'Dell, Ex. A-2

(Docket No. 58-1).  Defendant O'Dell denied the grievance, stating that plaintiff had been seen by

a nurse practitioner in April 2008 and had recently been at sick call for issues other than skin

related issues.  Id.

On June 9, 2008, nurse practitioner Julie Gallagher performed a Periodic Health

Maintenance examination on Cryer.  MR 40.  Nurse Gallagher noted that Cryer had no chronic

disease.  Id.  Nurse Gallagher noted Cryer's history of tinea versicolor and that upon examination,

Cryer's back was clear, but he had signs of tinea on his arms.  Id.  Nurse Gallagher noted that

Cryer was already using an antifungal cream, which was working on the tinea versicolor, but that

Cryer was also requesting Sween Cream for flaky, dry skin.  Id.  Nurse Gallagher ordered Sween

Cream for 60 days.  MR 41.  On October 18, 2008, Cryer submitted a sick slip requesting renewal

of Sween Cream.  MR 42.  On October 22, 2008, Cryer's record indicates that he refused to see

the staff when they responded to this sick slip.  Id.

On October 22, 2008, Cryer filed a medical grievance requesting that he be seen by a

nurse practitioner for a renewal "of my tenia versicolor ointments and creams" and requested pain

medication for arthritis and tendinitis.  G 12.

On November 28, 2008, D'Antonio saw Cryer for follow up for a recent ankle sprain. MR 43. During this examination, D'Antonio assessed Cryer's skin for tinea versicolor, noting areas of hypo-pigmentation on his trunk, back, and arms. Id. D'Antonio also noted mild dry skin. Id. D'Antonio ordered triamcinolone cream for thirty days to the affected areas to treat tinea versicolor and noted that Cryer could purchase moisturizer from the canteen. MR 43-44.

On December 8, 2008, Cryer filed a medical grievance requesting Eucerin cream or Sween Cream. G13. Cryer stated that the discharge instructions from New England Medical Center after he injured his ankle recommended that he be provided with Eucerin cream or Sween Cream. Id.

On December 10, 2008, Cryer filed a medical grievance, stating that he believed that the provision of Sween Cream had been restricted to individuals who were diagnosed with diabetes or Hepatitis C. G 14. Cryer stated that the medical staff had refused to provide him with the names and titles of the employees who were responsible for this supposed restriction. Id. Cryer requested that he be provided with the names and titles of these individuals. Id.

On December 23, 2008, Cryer filed five additional medical grievances. G 15-19. Two of these grievances mirrored Cryer's December 8, 2008 and December 10, 2008 grievances related to Sween Cream and/or Eucerin cream. G 18-19. The remaining three concerned treatment he received regarding his ankle. MR 15-17.

On January 6, 2009, defendant Dodge, acting Health Services Administrator, requested that defendant Nickl suspend Cryer's grievance privileges. G 21. On January 8, 2009, defendant Nickl suspended Cryer's medical grievance privileges until February 9, 2009. G 20. Nickl stated

that the reason for the suspension was that Cryer had filed five or more grievances in a week and had disregarded the proper grievance and appeal procedure.  Id.

Cryer did not submit any further sick slips relative to his skin conditions until March 11, 2009.  On March 11, 2009, Cryer submitted a sick slip requesting to see a dermatologist and a physician for tinea versicolor and also requested Sween Cream.  MR 45.  He was seen on March 12, 2009 and complained of dry, scaling skin on his arms, legs, feet, and back.  Id.  Upon examination, staff noted that there were no open areas of his skin or signs of infection.  Id.  Cryer was told to purchase moisturizing lotion at the canteen, pursuant to the nurse practitioner's previous notes.  Id.

On March 28, 2009, Cryer submitted a sick slip requesting to see a dermatologist and physician for his tinea versicolor and requested Sween Cream.  MR 46.  On April 16, 2009, D'Antonio noted that no dermatology consult was indicated and that Cryer had been told he could purchase moisturizer from the canteen.  Id.

On October 27, 2009, Cryer submitted a sick slip complaining that his skin was excessively dry and cracking, causing itching and pain.  MR 47.  On November 3, 2009, a nurse assessed Cryer and noted that his skin was very dry and was cracking all over his body and that his feet were very cracked, but there were no open or draining areas.  Id.  The nurse noted an "alteration in skin integrity" and referred the case to the nurse practitioner for a possible order of Sween Cream.  Id.

On November 9, 2009, nurse practitioner Mark Schnabel ordered Sween Cream for 60 days based on the nurse's assessment.  MR 48; UMCH Employee Defendants' Statement of Material Facts, Exhibit G, Affidavit of Mark Schnabel (Docket No. 77-7).  On February 1, 2010,

Schnabel renewed the order for Sween Cream for 60 days.  MR 49.  On April 1, 2010, Cryer submitted a sick slip asking that his orders for Sween Cream slated to expire on April 2, 2010 be renewed.  MR 50.  On April 5, 2010, Schnabel renewed this order for 130 days.  MR 51.

On August 17, 2010, Cryer submitted a sick call request asking to see Schnabel regarding the renewal of his orders for Sween Cream.  MR 55.  Nurse Kenney noted that the current order expired on August 17, 2010 and referred him to the nurse practitioner on August 18, 2010.  Id. On August 24, 2010, Schnabel renewed the order for Sween Cream for 130 days.  MR 56.  On January 10, 2011, Sween Cream was ordered by Schnabel for 130 days.  MR 57.  Cryer was still receiving Sween Cream as of October 13, 2011.  Affidavit of Mark Schnabel, ¶ 7.

B.      Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[13]  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  Sanchez v. Alvarad, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential to affect the outcome of the suit under the applicable law."  Id.  (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of

---

[13]   Rule 56 was amended effective December 1, 2010.  The substantive standard for summary judgment remains unchanged.  See Fed. R. Civ. P. 56 Advisory Committee's Note.

disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Where the plaintiff is proceeding pro se, the court construes his allegations liberally.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A court, however, will not "conjure up unpled allegations" to state an actionable claim.  McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

Cryer submitted a "Statement of Facts Disputed" in response to the DOC Defendants' motion[14] but did not support this statement with citations to the record as required by Rule 56(c)(1).  (Docket No. 73).[15]  Pursuant to LR. 56.1, movants for summary judgment must submit a statement of undisputed facts.  See also Fed. R. Civ. P. 56.  Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (plaintiff's failure to contest facts in LR. 56.1

---

[14]  In response to the UMCH Employees' motion, Cryer filed an opposition but without either an affidavit or statement of undisputed facts.

[15]  Cryer did supply an affidavit.  (Docket No. 73-1).  The affidavit, however, merely disputes the "defendants stance" without any specifics.

statement caused fact to be admitted on summary judgment). Pro se status does not insulate a party from complying with procedural and substantive law. Kenda Corp., Inc. v. Pot O' Gold Money Leagues, Inc., 329 F.3d 216, 225 n. 7 (1st Cir. 2003). Courts have frequently grappled with the tension between evenly enforcing the rules and working an injustice, especially in the summary judgment context. See, e.g., Szillery v. Career Systems Development Corp., No. 08-62, 2008 WL 2789492, * 2 (D. Me. July 17, 2008). However, courts have not typically freed pro se plaintiffs from the pleading burden set forth in Rule 56. Rollins v. Magnusson, No. 03-82, 2004 WL 3007090, * 3 (D. Me. December 28, 2004) (granting summary judgment against pro se defendant where response does not contain admissible evidence); Brennan v. Town of South Kingston, No. 10-186, 2011 WL 1898248 (D.R.I. April 14, 2011) (same); Bartlett v. American Power Conversion Corp., No. 05-084, 2006 WL 2709404, *2 n. 1 (D.R.I. September 20, 2006) (same). Nevertheless, even if the pro se plaintiff fails to respond to the statement of material fact, a court is still required to inquire as to whether the moving party has met its burden. Cordero-Soto v. Island Fin., Inc., 418 F.3d 114, 118 (1st Cir. 2005). Accordingly, the Court considers the Defendants' facts undisputed for purposes of the motion. See Fed. R. Civ. P. 56(e)(2); LR. 56.1.

Cryer opposed each motion for summary judgment by stating that the motions were filed too early in the case and that he needs discovery in order to oppose Defendants' motions and establish "the who, what, when, where, why and how" of his claims. See Plaintiff's Opposition and Request (Docket No. 73); Plaintiff's Opposition to Summary Judgment (Docket No. 82). Cryer requests that, pursuant to Fed. R. Civ. P. 56(d), the Court defer ruling on the motions for summary judgment until Cryer can obtain discovery. The Court declines to do so.

First, the Defendants' motions for summary judgment are timely. As Cryer points out in

his opposition, a party may move for summary judgment "at any time until 30 days after the close of discovery." Fed. R. Civ. P. 56(b). Because discovery has not closed in this case, Defendants' motions are timely.

Cryer argues that he needs discovery in order to oppose Defendants' motions. Cryer asserts that "discovery is essential in this case to show liability of each defendant" and that with discovery he will be able to "obtain the names of staff responsible or interviewed, notes, policies, rules, documents, regulations, contracts, any memorandums, agreements, affidavits, reports, admissions, times, date, duties, post orders, etc." (Docket No. 73).

Pursuant to Fed. R. Civ. P. 56(d),[16] a court can defer considering a motion for summary judgment and allow time for discovery if the party opposing summary judgment shows by affidavit or declaration that it cannot present facts essential to justify his opposition. A party invoking Rule 56(d) must "articulate some plausible basis to support a belief that discovery material exists, which, if available, would suffice to raise a trial worthy issue." Filiatrault v. Comverse Technology Inc., 275 F.3d 131, 138 (1st Cir. 2001). In other words, a Rule 56(d) proffer must rise above mere speculation. Resolution Trust Corp. v. North Bridge Assocs., 22 F.3d 1198, 1206 (1st Cir. 1994) (citations omitted). "The question of whether discovery is appropriate falls within the Court's discretion." Century Indemnity Co. v. Liberty Mutual Insur. Co., 708 F. Supp. 2d 202, 214 (1st Cir. 2010).

Cryer's argument fails for two reasons. First, by its own terms, Rule 56(a) requires that Cryer submit an affidavit or declaration that provides specific reasons why he cannot present facts

---

[16] Rule 56 was amended effective December 1, 2010. Subsection (d) contains without substantial change what was previously contained in subsection (f). See Fed. R. Civ. P. 56 Advisory Committee's Note.

essential to justify its opposition.  Cryer only submitted an affidavit in connection with the DOC

Defendants' motion for summary judgment.  (Docket No. 73-1).  As discussed infra, Cryer's pro

se status does not insulate him from the rule's requirements.  See Boyle v. Barnstable Police

Dept., No. 09-11435, 2011 WL 4443426, * 8 (D. Mass. Sept. 22, 2011) (pro se plaintiff must

satisfy Rule 56(d) requirements).

More importantly, in connection with their motions, Defendants submitted: (1) the

regulations and policies regarding prisoner medical care and grievances; (2) the medical records

regarding Cryer's skin condition; and (3) Cryer's grievances regarding his medical care.[17]

(Docket Nos. 77-2; 77-3).  Cryer has not provided a reason, by affidavit or otherwise, why this

information is insufficient to allow him to present facts essential to justify his opposition or how

the information he seeks would raise a trial worthy issue regarding his medical care.

Accordingly, the Court will not defer its consideration of the motions for summary judgment.

C.      42 U.S.C. § 1983

Section 1983 is a vehicle through which individuals may sue certain persons acting under

the color of state law for deprivation of federally assured rights.  Gagliardi v. Sullivan, 513 F.3d

301, 306 (1st Cir. 2008).  Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress ... .

---

[17]  The DOC Defendants also submitted a copy of the medical records regarding Cryer's
skin condition in connection with its March 2011 status report.  (Docket No. 35).

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-4 (1989).

Cryer alleges that the individual Defendants violated Section 1983 by violating his Eighth and Fourteenth Amendment rights because they were deliberately indifferent to his serious medical needs. "A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997). For purposes of the Defendants' motions, there is no dispute that the DOC Defendants and the UMCH Employee Defendants were acting under color of state law. However, Defendants contend that they did not deprive Cryer of any constitutional rights.

1.   ***Claims Against Defendants In Their Official Capacity***

Cryer has sued the Defendants in both their individual and official capacities. However, a state official acting in his official capacity cannot be sued for damages in a Section 1983 action. Wang v. New Hampshire Board of Registration in Medicine, 55 F.3d 698, 700 (1st Cir. 1995); Rafferty v. Cranston Pub. Sch. Comm, 315 F.3d 21, 28 (1st Cir. 2002). Therefore, Cryer cannot pursue money damages against any defendant in his/her official capacity for his Section 1983 claims and those claims should be dismissed.[18]

---

[18]   To the extent that Cryer intended to sue the Department of Correction for money damages, such claims must also be dismissed, as the Department of Correction is not a "person" withing the meaning of 42 U.S.C. § 1983. Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984).

2.        ***Claims Against Defendants In Their Individual Capacity***

a.        <u>Eighth Amendment Claim</u>

Deliberate indifference to a prisoner's serious illness or injury states a cause of action for a violation of the Eighth Amendment under Section 1983. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To establish an Eighth Amendment violation, Cryer must show that: (1) objectively, the deprivation alleged is sufficiently serious; and (2) subjectively, that Defendants were deliberately indifferent to his health or safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

A medical need is "serious" if "it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990). The seriousness of an inmate's needs may also be determined by reference to the effect of a delay in treatment. <u>Id.</u> The DOC defendants argue that Cryer's tinea versicolor does not constitute a serous medical need. DOC Def.'s Memo., p. 10. Cryer alleges and his medical records bear out that over a lengthy period of time he registered multiple complaints regarding his skin condition. These records show that Cryer was prescribed either an anti-fungal cream or skin lotion for his skin condition. Under these circumstances, it is doubtful that Cryer's skin condition rose to the level of constitutional significance. <u>See</u>, <u>e.g.</u>, <u>Bonnett v. Morgan</u>, No. 10-3503, 2011 WL 2791273, *3 (D. Md. July 13, 2011) (skin rash not serious as it neither poses a threat to plaintiff's life nor inflicts unnecessary pain); <u>Peterson v. Miller</u>, No. 04-797, 2007 WL 2071743, *6 (N.D.N.Y. July 13, 2007) (finding foot rash to not be "sufficiently serious").

However, even assuming <u>arguendo</u> that Cryer's skin condition could be sufficiently serious to satisfy the first element of an Eighth Amendment claim, the Court does not find that the

DOC Defendants and the UMCH Employee Defendants were deliberately indifferent to his

medical needs. An Eighth Amendment claim of cruel and unusual punishment based on medical

mistreatment requires more than "an inadvertent failure to provide adequate medical care" and

must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs." Feeney v. Correctional Medical Services, 464 F.3d 158, 161 (1st Cir. 2006)

(quoting Estelle, 429 U.S. at 105-106). Deliberate indifference "may be manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once prescribed."

Estelle, 429 U.S. at 104-5. Cryer can demonstrate deliberate indifference only if the medical

attention he received is "so clearly inadequate as to amount to a refusal to provide essential care"

and must be "so inadequate as to shock the conscience." Torraco v. Maloney, 923 F.2d 231, 234

(1st Cir. 1991) (citations omitted). Further, prison officials are entitled to rely on the

recommendations of doctors and nurses. Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987).

Although issues concerning state of mind, such as deliberate indifference, are often

unsuited to resolution on summary judgment, summary judgment is appropriate when there is no

evidence that a plaintiff received treatment "so inadequate as to shock the conscience." See

Torraco, 923 F.2d at 234; see also, Sires, 834 F.2d at 13 (finding summary judgment appropriate

where the only evidence produced "demonstrated carefully thought-out medical decisions.");

Massey v. Rufo, No. 92-1380, 1994 U.S. App. LEXIS 6202 (1st Cir. 1994) (finding that there was

no material question of fact that defendants were not deliberately indifferent to the plaintiff's

needs and that "discovery would not aid plaintiff."). Such is the case here. Cryer's medical

records demonstrate that the UMCH Employee Defendants were responsive to Cryer's medical

needs. For example, Defendant D'Antonio examined Cryer or was consulted regarding the treatment for his skin condition on six occasions. See MR 28-29; 34-36; 39; 43-44. Cryer's medical records indicate that Defendant D'Antonio: (1) prescribed an anti-fungal cream for his tinea versicolor, see MR 28-29; 39, 43-44; (2) prescribed Sween Cream, see MR 34; or (3) determined that Sween Cream was not medically necessary and notified him that he could purchase moisturizing lotion at the prison canteen, see MR 35-36; 39; 43-44. Defendant Sarao examined Cryer on two occasions for his skin condition, and in each instance referred Cryer to a nurse practitioner for follow up. See MR 35-36. Contrary to his assertions, Cryer's medical records show that he was provided with adequate medical treatment; the UMCH Employee Defendants responded to his sick slips, examined him accordingly, and prescribed medications to address his tinea versicolor, including Sween Cream when medically necessary. Because there is no evidence that Cryer received treatment "so inadequate as to shock the conscience," the Court finds that the UMCH Employee Defendants were not deliberately indifferent to his medical needs.

Cryer's main issue is that the Defendants did not provide him with Sween Cream, a non-prescription lotion. However, "[t]he right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir. 1981). "A claim of inadequate medical treatment which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." DesRosiers v. Moran, 949 F.2d 15, 20 (1st Cir. 1991). "Where the dispute concerns not the absence of help, but the choice of a certain choice of treatment, or evidences a mere disagreement with considered medical judgment, [the court] will

not second guess the doctors." <u>Sires</u>, 834 F.2d at 13.  Similarly, mere negligence of the kind

giving rise to a claim of medical malpractice does not evidence deliberate indifference on a prison

official's part.  <u>Estelle</u>, 429 U.S. at 106; <u>see</u> <u>also</u> <u>Feeney</u>, 464 F.3d at 162 ("when a plaintiff's

allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute

with an exercise of professional judgment may present a colorable claim of negligence, but it falls

short of alleging a constitutional violation.") (citations omitted).  Accordingly, Cryer's issues with

the type of medical treatment he received and the medical decisions that lead to such treatment

are not cognizable under the Eighth Amendment and his Section 1983 claim fails.[19]

Cryer's claim that the DOC Defendants and Defendants Nickl, Phelps, and Dodge were

deliberately indifferent to his medical needs because they failed to respond to or wrongfully

denied his medical grievances also fails.[20]  The record demonstrates that both the DOC

Defendants and Defendants Nickl, Phelps and Dodge reviewed Cryer's medical records,

responded to his grievances, and provided him with the basis for their determinations.  <u>See</u> G 01-

21.  Although Cryer's grievance privileges were revoked for a short time, this was done in

accordance with UMCH policy after he filed five grievances in one day and without waiting for

his previous grievances to be addressed.  <u>See</u> G 20-1.  There is no indication in the record that this

suspension affected Cryer's access to medical care.  The fact that the DOC Defendants and the

---

[19]  The DOC Defendants correctly state that defendant Dickhaut cannot be liable under
Section 1983 based on supervisory liability.  <u>See</u> DOC Def.'s Memo., p. 14-15.  Although the
Court notes that there is no evidence in Cryer's medical records that Dickhaut was directly
involved in Cryer's medical care, the Court's finding that the Defendants were not deliberately
indifferent to Cryer's medical needs obviates the need for this analysis.

[20]  Cryer did not separately allege a due process claim in connection with the grievance
allegations.  He quite explicitly links the denial of his grievances with his medical care and his
Eighth Amendment allegations.  <u>See</u> Complaint, p. 1, 5.

UMCH Employee Defendants did not respond to Cryer's grievances in the manner in which he would like does not constitute an Eighth Amendment violation.  See Scarpa v. Dubois, No. 93-2118, 1994 U.S. App. LEXIS 13285, *9 (1st Cir. June 6, 1994).  Therefore, Cryer's Section 1983 claim based on the denial of his grievances also fails.

    b.  Article 26

    Cryer alleges that the Defendants violated Article 26 of the Massachusetts Declaration of Rights, which prohibits the infliction of "cruel and unusual punishments."  Mass. Const. Pt. 1, art. 26.  The rights guaranteed under Article 26 "are at least equally as broad as those guaranteed under the Eighth Amendment."  Michaud v. Sheriff of Essex County, 390 Mass. 523, 534 (1983). The Eighth Amendment's deliberate indifference standard applies to claims for deliberate indifference to medical needs under Article 26.  See Hennessy v. Dennehy, No. 08-11724, 2010 U.S. Dist. LEXIS 90692, *32-33 (D. Mass. September 1, 2010); Abdullah v. Sec'y of Pub. Safety, 42 Mass. App. Ct. 387, 394 (1997); Good v. Comm'r of Corr., 417 Mass. 329, 335 (1994). Because the Court finds that the DOC Defendants and the UMCH Employee Defendants were not deliberately indifferent to Cryer's medical needs, his claim under Article 26 also fails.

    c.  Negligence Claims

    Cryer brings claims against the defendants based on negligence.  Such claims are governed by the Massachusetts Tort Claims Act ("MTCA").  Mass. Gen. Laws, ch. 258, § 2.  The MTCA provides that "no . . . public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . ."  Id.

    Here, Cryer brings suit against the UMCH Employee Defendants and the DOC

Defendants based on the performance of their duties either as medical providers or prison administrators. Accordingly, because the Defendants are alleged to have acted within the scope of their employment, the tort claims against them must be dismissed from proceedings in this Court.[21]

Even if, arguendo, Cryer could prove that the individual defendants were not public employees, the DOC Defendants also argue that Cryer's negligence claim fails because he has not met the MTCA's presentment requirement. As a prerequisite to filing suit, the MTCA requires the presentment of a claim in writing to the executive officer of the public employer within two years of the date upon which the cause of action arose. M.G. L. c. 258 § 4. Constructive notice is insufficient, Robinson v. Commonwealth, 32 Mass. App. Ct. 6, 10 (1992), and failure to comply with this requirement is grounds for summary judgment. Federal Ins. Co. v. Boston Water and Sewer Comm'n, 583 F. Supp. 2d 225, 231 (D. Mass. 2008).

In support of their exhaustion argument, the DOC Defendants submitted the affidavit of Deborah Firlit of the Massachusetts Executive Office of Public Safety and Security. In that affidavit, Ms. Firlit states that Cryer has not made a presentment to her office in connection with any claim against the Commonwealth of Massachusetts. See Affidavit of Deborah Firlit, Ex. B (Docket No. 58-1). In his opposition, Cryer asserts that he made a presentment to the Attorney General but does not support this assertion with any specifics. See Plaintiff's Opposition and Request, p. 2. (Docket No. 73). Unsupported allegations do not demonstrate the existence of a genuine issue of material fact sufficient to defeat summary judgment. Rivera-Colon v. Mills, 635 F.3d 9, 12 (1st Cir. 2011). Accordingly, Cryer's negligence claims are also subject to dismissal

---

[21] As described supra, the negligence claims against the individual defendants acting in their official capacity are subject to dismissal based on the Eleventh Amendment.

based on a failure to comply with the MTCA's presentment requirement.

        d.        <u>PLRA</u>

Cryer seeks compensatory and punitive damages for conscious pain and suffering and emotional distress. Complaint, p. 1. The DOC Defendants argue that such claims are barred by the PLRA, 42 U.S.C. § 1997e(e), because Cryer has not demonstrated the prerequisite physical injury. DOC's Def.'s Memo., p. 8-10. (Docket No. 57). Because the Court finds that Cryer's Section 1983 claim fails because he has not established that Defendants were deliberately indifferent to his medical needs, the Court need not decide this issue.

        e.        <u>Qualified Immunity</u>

The DOC Defendants argue that they are entitled to qualified immunity. The qualified immunity doctrine provides public officials an immunity from suit and not a mere defense to liability. <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 268 (1st Cir. 2009). A court must perform a two-step analysis in determining qualified immunity. <u>Id.</u> at 268-9. A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendants' alleged violation. <u>Id.</u> A right is "clearly established" if at the time of the alleged violation, the contours of the right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Id.</u> at 269 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). Because the Court has determined that Cryer has not established a constitutional violation, the Court does not need to address this defense. <u>Ruiz-Casillas v. Camacho-Morales</u>, 415 F.3d 127, 134 (1st Cir. 2005).

IV. **Conclusion**

For the foregoing reasons, I recommend that the District Court:

1.      grant UMCH's motion to dismiss (Docket No. 54);

2.      deny Cryer's Motion for Voluntary Dismissal and Substitution (Docket No. 62);

3.      grant the DOC Defendants' motion for summary judgment (Docket No. 56);

4.      grant the UMCH Employee Defendants' motion for summary judgment (Docket No. 75); and

5.      in light of the Court's recommendation with respect to the UMCH Employee Defendants' motion for summary judgment, deny Defendant D'Antonio, Sarao, and Dodge's motion to dismiss (Docket No. 27) as moot.

V.      **Review by District Judge**

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

<u>Sunview Condo. Ass'n v. Flexel Int'l</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d

343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge